IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERICA H.,[1]

           Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

           Defendant.

No. 6:23-cv-00253-HZ

OPINION & ORDER

Katherine L. Eitenmiller
Katie Taylor
Wells, Manning, Eitenmiller & Taylor, P.C.
474 Willamette Street
Eugene, Oregon 97401

    Attorneys for Plaintiff

Kevin Danielson
Assistant United States Attorney
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

Katherine B. Watson
Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

    Attorneys for Defendant

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Erica H. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income ("SSI") and DIB on January 23, 2017, alleging an onset date of January 1, 2009. Tr. 300-01.[2] Plaintiff's date last insured ("DLI") is March 31, 2014. Plaintiff's applications were denied initially and on reconsideration.

On May 29, 2019, Plaintiff appeared *pro se* for a hearing before an Administrative Law Judge ("ALJ"). Tr. 72-76. On July 9, 2019, the ALJ found Plaintiff not disabled from January 1, 2009, through January 31, 2011, and disabled beginning February 1, 2011, because beginning on February 1, 2011, Plaintiff's impairments met Listings 12.04, 12.06, 12.11, and 12.15. Tr. 122-130. The Appeals Council reviewed the decision; found the ALJ erred in her DIB determination because, among other things the record did not support findings of marked limitations that were necessary to conclude that Plaintiff met multiple Listings; and remanded the matter to the ALJ for further proceedings.[3] Tr. 135-42.

On June 22, 2021, Plaintiff appeared *pro se* for a hearing on remand before a different ALJ. Tr. 36-71. On August 4, 2021, the ALJ found Plaintiff not disabled during the closed period

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 7.
[3] The Appeals Council affirmed the ALJ's decision granting Plaintiff SSI benefits.

of January 1, 2009, through March 31, 2014, and, therefore, not entitled to DIB. Tr. 14-29. On February 21, 2023, Plaintiff appealed the ALJ's decision to this Court.

## FACTUAL BACKGROUND

Plaintiff alleges disability during the relevant period due to severe anxiety; panic attacks; depression; back, leg, hip, and head pain; muscle spasms; migraines, irritable bowel syndrome; issues with learning, remembering, and concentrating; problems speaking, talking with, and "being around" people; and an umbilical hernia. Tr. 82-83. Plaintiff was 27 years old at the time of her alleged onset date. Tr. 300. Plaintiff has a ninth-grade education. Tr. 641. Plaintiff has past relevant work experience as a home attendant, nurse assistant, and laborer-stores. Tr. 27.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Id.*

3 – OPINION & ORDER

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity during the relevant period of January 1, 2009, through March 31, 2014. Tr. 18. At steps two and three, the ALJ determined that during the relevant period Plaintiff had the following severe impairments: "lumbar degenerative disc disease, obesity, depressive disorder, general social phobia, borderline intellectual functioning (BIF), [and] posttraumatic stress disorder (PTSD)." *Id*. The ALJ, however, determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment during the relevant period. Tr. 19. The ALJ concluded that during the relevant period Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except:

> [T]he work would have provided a reasonable sit/stand option of up to 5 non-contiguous minutes per hour that would not have involved leaving the work station or the productive performance of work; and that did not require more than occasional stooping, crouching, crawling, kneeling, balancing, or climbing of ramps/stairs in an 8-hour workday; any exposure to workplace hazards such as unprotected heights, dangerous moving machinery, or commercial driving; the performance of more than simple, routine tasks; or the performance of tasks that involve more than occasional, superficial interaction with the general public or coworkers.

Tr. 20. At step four, the ALJ concluded that during the closed period Plaintiff could not perform her past relevant work. Tr. 27. The ALJ found at step five that Plaintiff could perform other work in the national economy during the relevant period. Tr. 28. The ALJ, therefore, concluded that Plaintiff was not disabled during the relevant period. Tr. 29.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)(internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's")(internal quotation marks omitted).

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) partially rejected the opinions of Craig West, Ph.D., William Trueblood. Ph.D.; and Pamela Roman, Ph.D.; (2) partially rejected Plaintiff's testimony; and (3) partially rejected the lay testimony of Plaintiff's husband.[4]

### I.      Medical Opinion Evidence

Plaintiff contends the ALJ erred when she partially rejected the opinions of Drs. West, Trueblood, and Roman.

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). For application filed before March 27, 2017, generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id*.; 20 C.F.R. § 404.1527(c)(1)-(2). More weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

An ALJ may reject a treating or examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

---

[4] Because the Court remands this matter for an award of benefits based on the ALJ's failure regarding crediting medical sources, the Court does not address Plaintiff's allegations of error in crediting her testimony and the lay-witness testimony.

### A. Dr. West

On February 3, 2011, Dr. West conducted a psychological evaluation of Plaintiff. Dr. West took a detailed history and conducted a clinical interview and mental status examination. Dr. West noted Plaintiff presented as a "kind and responsive individual," with "adequate" appearance, and slumped posture. Tr. 642. Plaintiff was "able to fully attend to the questions directed towards her," but required "reminders to stay on task." Tr. 643. Plaintiff was able to spell "world" forward, but not backwards; could not count by threes from one to 40 without making errors; and was able to count from 1 to 20 by twos forward without error. Dr. West noted, however, that it took Plaintiff "an additional amount of time to respond and she began crying due to her frustration." *Id.* Plaintiff's "relationship" with Dr. West "could be described as responsive," but Plaintiff "gave the impression she had slight difficulty interacting with" him due to anxiety. *Id.* Dr. West concluded based on his examination that Plaintiff "would likely have little difficulty performing very simple . . . tasks." *Id.* Plaintiff "appear[ed] able to solve simple problems, but ha[d] slight difficulty with . . . complex problems," and was "not able to think abstractly." *Id.* at 644. Dr. West found "moderate evidence to indicate that depression and mood instability would contribute to [Plaintiff's] deterioration in a work setting" and Plaintiff "would have moderate difficulty accomplishing persistence and pace over an extended period of time requiring concentration, memory and energy, especially if she perceived the tasks to be overwhelming." *Id.* at 643. Plaintiff was also "likely to have moderate difficulty interacting with others in a work related environment due to emotional instability," but "likely require no special or close supervision to assist her in interacting with others appropriately." *Id.* Ultimately, Dr. West concluded that Plaintiff was "likely unable to perform work related activities on a

consistent basis requiring an eight-hour workday. She is likely able to perform work part-time 4-6 hours a day for a few days a week." *Id.*

The ALJ gave Dr. West's opinion significant weight except for his statement that Plaintiff was "likely unable to perform work related activities on a consistent basis requiring an eight-hour workday." Tr. 26. The ALJ gave that statement no weight on the basis that it was internally inconsistent with Dr. West's findings of moderate limitations in persistence, pace, and concentration, and in interacting with others, and his finding that there is only "moderate evidence to indicate that depression and mood instability would contribute to [Plaintiff's] deterioration in a work setting." *Id.*

Dr. West's conclusion regarding Plaintiff's ability to work an eight-hour day on a sustained basis stemmed from his findings on the combined impact of Plaintiff's symptoms, mental limitations, social issues, and cognitive impairment rather than the result of his findings in any single area. In addition, Dr. West's opinion is not contradicted by any examining or treating medical professional. In fact, it is consistent with the opinions of two other examining psychologists.

The ALJ erred when she gave no weight to Dr. West's statement that Plaintiff was "likely unable to perform work related activities on a consistent basis requiring an eight-hour workday" because the ALJ did not provide clear and convincing reasons for doing so based on substantial evidence in the record.

### B. Dr. Trueblood

On July 18, 2012, Dr. Trueblood conducted a Neuropsychological and Learning Disability Evaluation of Plaintiff. Dr. Trueblood interviewed Plaintiff, conducted a mental status examination, and administered seven neuropsychological tests. Plaintiff's "affect was

appropriate and . . . subdued with very little smiling" and she "was tearful at times during the interview. Anxiety seemed to consist of just a mildly tense quality during the interview" including "throughout much of the testing." Tr. 695. Dr. Trueblood noted an "impression of low stress tolerance which might be a reflection of the degree of [Plaintiff's] depression." *Id*. at 696. Nevertheless, Dr. Trueblood "believe[d] [Plaintiff] . . . provide[d] good effort throughout the neuropsychological testing and that valid results were obtained that . . . provide[d] accurate information," although Plaintiff's anxiety and discomfort with testing "seemed to contribute to quality of mild impersistcnce [*sic*] which . . . might cause the obtained scores to just be very mild underestimates of [Plaintiff's] true neuropsychological skill levels." Tr. 696. In addition, Dr. Trueblood opined that Plaintiff's "current neuropsychological skill levels primarily reflect her long-term functioning rather than any large decline from a previously higher level of intellectual or other cognitive skills." *Id.* at 699. Dr. Trueblood diagnosed Plaintiff with "generalized social phobia," a panic disorder, borderline intellectual functioning, and depression that "appears to be long-term." Tr. 700. Dr. Trueblood also completed a Mental Residual Function Capacity Report in which he indicated Plaintiff was markedly limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for "extended periods"; complete "a normal workday and workweek without interruptions from psychologically based symptoms"; perform at a consistent pace "without an unreasonable number and length of rest periods"; interact appropriately with the general public; and accept instructions and respond appropriately to criticism from supervisors." Tr. 702-03. Dr. Trueblood indicated Plaintiff's condition "has [lasted] or will . . . last at least 12 months" and noted Plaintiff's prognosis as "fair." Tr. 703. Dr. Trueblood concluded that he did "not view [Plaintiff] as employable at this time," but stated he did not "have bases to predict that she will be unemployable or unable to

9 – OPINION & ORDER

obtain and maintain employment within the next year." *Id.* at 701. Dr. Trueblood suggested Plaintiff receive mental-health treatment and "after 4 to 6 months of . . . treatment it would be . . . appropriate . . . to obtain [the] treating mental health professionals' opinions regarding the appropriateness of initiating some return to work efforts." *Id.* Dr. Trueblood noted, however, that "[e]ven then, it probably would be a fairly gradual process and might first involve a work trial or participating in some classes." *Id.*

The ALJ gave Dr. Trueblood's opinion little weight on the grounds that Dr. Trueblood noted he was "not a vocational expert, and thus any opinion [he] offere[d] on [the issue of Plaintiff's ability to perform work in the national economy] is a tentative one" and he stated, "there can be improvement with mental health treatment." Tr. 26-27. Dr. Trueblood, however, specifically noted that Plaintiff's impairments had lasted at least 12 months at the time of his assessment. In addition, Dr. Trueblood's opinion is consistent with that of Dr. West and is not contradicted by any treating or examining mental-health professional.

On this record the Court concludes the ALJ erred when she gave little weight to Dr. Trueblood's opinion because the ALJ did not provide clear and convincing reasons for doing so based on substantial evidence in the record.

    **C.**    **Dr. Roman**

On February 2, 2018, Dr. Roman conducted a psychodiagnostic assessment of Plaintiff in which she diagnosed Plaintiff with major depressive disorder, agoraphobia, and borderline intellectual functioning. Tr. 631. Dr. Roman noted Plaintiff presented "with severe symptoms of depression and anxiety. She wept, shook and starred [*sic*] at the floor during most of the interview . . . [and] described severe feelings of depression." *Id.* Dr. Roman stated Plaintiff "was able to understand and remember only simple instructions during the interview," she

"would not be expected to understand and remember more complicated instructions," she "would not be expected to maintain attention and concentration on even a part-time basis without decompensating and being quite distracting to others," and that Plaintiff reported she has had these issues for the "past eight years since her second son was born." *Id.* at 632.

The ALJ gave "little to no weight" to Dr. Roman's opinion on the grounds that she examined Plaintiff nearly four years after Plaintiff's date last insured and the findings do not "provide substantial support of a finding of disability for the period at issue." Tr. 27.

The Ninth Circuit, however, has held that "reports containing observations made after the period for disability are relevant to assess the claimant's disability" and that such reports "should not be disregarded solely on [the] basis" that they were "rendered retrospectively." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). When medical opinions "refer back" to the same chronic condition and symptoms discussed in a physician's opinion "from several years prior," the "fact that those opinions were issued significantly after [the plaintiff's] [date last insured] does not undercut the weight those opinions are due." *Svaldi v. Berryhill*, 720 F. App'x 342, 343–44 (9th Cir. 2017). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1228-29 (9th Cir. 2010)("While the ALJ must consider only impairments (and limitations and restrictions therefrom) that Turner had prior to the [date last insured], evidence post-dating the [date last insured] is probative of Turner's pre-[date last insured] disability."). Rather, "[t]he opinion of a psychiatrist who examines the claimant after the expiration of his disability insured status . . . is entitled to less weight than the opinion of a psychiatrist who completed a contemporaneous exam." *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996). *See also Barker v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08136-PCT-DWL, 2019 WL 3718975, at *5 (D. Ariz. Aug. 7, 2019) (same).

Dr. Roman's opinions address the same chronic condition and symptoms as those discussed in the opinions of Drs. West and Trueblood that were issued several years prior, therefore, the "fact that [Dr. Roman's opinion was] issued significantly after [Plaintiff's] [date last insured] does not undercut the weight [that opinion is] due." *Svaldi*, 720 F. App'x at 343–44. The ALJ, however, gave little to no weight to Dr. Roman's opinion solely on the basis that it was issued after Plaintiff's date last ensured.

On this record the Court concludes the ALJ erred when she gave little to no weight to Dr. Roman's opinion because the ALJ did not provide clear and convincing reasons for doing so based on substantial evidence in the record.

## II.     Remand

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Generally, the decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Strauss v. Comm'r*, 635 F.3d 1135, 1137 (9th Cir. 2011). The Ninth Circuit, however, has established a limited exception to this general rule. *Id.* at 1138. Under the limited exception, the Court must grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.2 (9th Cir. 2000).

The Court has determined the ALJ erred when she improperly partially rejected the opinions of Drs. West, Trueblood, and Roman. After giving these opinions the effect required by law, the Court finds Plaintiff cannot work on a regular and continuing basis and, therefore, is disabled. *See* 20 C.F.R. §§ 404.1545(b), 416.945(b)(RFC is ability to work on "regular and continuing basis"). *See also* SSR 96-8p ("regular and continuing basis" is "8 hours a day, for 5 days a week, or an equivalent work schedule"). The Court, therefore, concludes this matter should not be remanded for further proceedings. Accordingly, the Court remands this matter to permit the Commissioner to calculate and to award benefits.

## CONCLUSION

For these reasons, the Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

DATED:  January 5, 2024

*Marco Hernandez*
MARCO A. HERNÁNDEZ
United States District Judge

13 – OPINION & ORDER